**Bob E. RYKHUS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–743.**

United States Court of Veterans Appeals.

June 25, 1993.

Before STEINBERG, Associate Judge▪

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, veteran Bob E. Rykhus, appeals from a March 20, 1992, decision of the Board of Veterans' Appeals (BVA or Board). That decision denied service connection for internal derangement of the right knee and secondary service connection for a bilateral leg disorder, a bilateral foot disorder, a left-knee disability, and arthritis of multiple joints, and concluded that a 1957 decision of a Veterans' Administration (now Department of Veterans Affairs) (VA) re-

gional office (RO) did not contain clear and unmistakable error (CUE). The Secretary of Veterans Affairs (Secretary) has moved for partial summary affirmance and partial remand. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990). The Secretary's motion will be granted in part and denied in part, and the Board's decision will be affirmed in part and vacated and remanded in part.

## I. Background

The veteran served on active duty in the U.S. Army from March 24, 1955, to March 22, 1957. R. at 15. Although he complained of pain in both knees at an October 1954 preinduction examination, the clinical evaluation was negative for findings indicative of a knee disorder. R. at 16–17. The clinical evaluation at a second preinduction examination, conducted in March 1955, did not indicate any pertinent abnormalities. R. at 18–19.

Following the veteran's complaint of pain and stiffness in the right knee, a service medical record (SMR) dated June 1956 indicated a provisional diagnosis of "[c]hronic medial ligamentous strain versus partial cartilage tear." R. at 20. A "re-profile" examination performed in August 1956 diagnosed the veteran as having internal derangement of the right knee, for which he was placed on limited duty. R. at 23–24. A September 1956 clinical record noted that the cause of the right-knee disability may have been a "twisting injury that was not particularly noticed", and the diagnosis was "probably a mild incomplete medial collateral ligament tear". R. at 27. A January 1957 separation examination noted a history of right-knee disability, but the clinical evaluation made no finding indicating a right-knee disability. R. at 28–31.

Upon separation, the veteran submitted to the Los Angeles, California, VARO a claim for service connection for a right-knee disability. R. at 34–35. He was apparently scheduled for a physical examination, which he did not attend. R. at 37. The RO denied service connection in a June 18, 1957, decision (R. at 36), and, in a letter dated June 21, 1957, the veteran was notified of the decision as well as his right to appeal within one year (R. at 37). The veteran did not file a timely appeal.

In April 1989, the veteran began proceedings to reopen his claim for service connection for a right-knee disability, and to seek secondary service connection for a left-knee disability, a bilateral leg disorder, and a bilateral foot disorder. R. at 38–42. In support of these claims, the veteran submitted a private medical consultation report, dated June 20, 1983, from Dr. Wandyr J. Moore, diagnosing the veteran with generalized osteoarthritis and several other disabilities affecting his knees, ankles, and feet. R. at 45–48. In a May 1989 decision, the San Diego, California, RO denied service connection for the right-knee disability, concluding that the private medical statement did not constitute new and material evidence so as to reopen the veteran's claim. R. at 50, 55. In the same action, the RO denied secondary service connection for the remaining disabilities. *Ibid.* The veteran filed a Notice of Disagreement and requested a personal hearing. R. at 52.

At the ensuing November 3, 1989, hearing, the veteran raised a new claim for service connection for arthritis in multiple joints. R. at 65–66. In a November 22, 1989, decision, the San Diego RO again denied service connection for all of the claimed disabilities, including arthritis (R. at 71), and the veteran's appeal was thereafter forwarded to the BVA (R. at 72). In a May 1990 written presentation to the BVA, the veteran's representative asserted that the 1957 RO decision denying service connection for a right-knee disability contained CUE because the SMRs before the Los Angeles RO in 1957 had demonstrated the presence of a chronic right-knee disability in service. R. at 74. In its August 1990 decision, the BVA remanded the case to the San Diego RO to consider the veteran's CUE claim and to provide the veteran with a Supplemental Statement of the Case concerning the denial of service connection for arthritis. R. at 76. In a November 1990 decision, the RO determined that the

1957 denial of service connection for a right-knee disability did not constitute CUE. R. at 78. The veteran again appealed to the BVA, which, in a June 1991 decision, found no CUE in the 1957 denial of service connection, that evidence submitted by the veteran since the 1957 decision was not new and material for purposes of reopening the right-knee claim, and that the remaining disabilities were not service connected. R. at 93–102. Subsequently, the BVA granted a motion for reconsideration of the June 1991 decision. In the March 20, 1992, reconsideration decision here on appeal, a reconsideration section of the Board affirmed the findings of the prior BVA decision. R. at 3–11.

## II. Analysis

### A. *Clear and Unmistakable Error*

■ Under 38 C.F.R. § 3.105(a) (1992), "clear and unmistakable error" requiring revision of a prior final RO or BVA decision exists only where it appears "undebatably" that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Russell v. Principi*, 3 Vet.App. 310, 313 (1992). On CUE claims, as with all other claims, the claimant bears the initial burden of submitting a well-grounded claim. *See Newman v. Brown*, 5 Vet.App. 99, 102 (1993). Pursuant to 38 U.S.C.A. § 5107(a) (West 1991), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." *See Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); *Tirpak v. Derwinski*, 2 Vet.App. 609 (1992) (holding that a doctor's statement that a veteran's death "may or may not" have been avoided but for his service-connected disabilities was speculative and did not justify a belief that the appellant's claim was well grounded). A "mere disagreement as to how the facts were weighed or evaluated" does not constitute a well-grounded CUE claim. *Newman, supra; Russell, supra.*

■ In the present case, the veteran, in support of his CUE claim, asserted that "the SMR's show numerous complaints and treatment for a disability of the right knee and the veteran had a profile for the condition" (R. at 74) and that "given the evidence presented to the [RO] rating board in 1957, the reasonable doubt standard should have been invoked in favor of the veteran" (R. at 90). These arguments amount to no more than a "mere disagreement as to how the facts were weighed or evaluated" by the RO in 1957. Therefore, that CUE claim is not, as a matter of law, well grounded, and the Court thus will affirm the BVA denial of that claim in its March 1992 decision. *See Newman, supra; see also Grottveit v. Brown* 5 Vet.App. 91, 93 (1993) (whether a claim is well grounded is a question of law which the Court reviews de novo).

### B. *New and Material Evidence to Reopen Right–Knee Claim*

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See Suttmann v. Brown*, 5 Vet.App. 127, 134–36 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step" analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991).

■ The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The Court recently synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand

and which, as this Court stated in *Colvin, supra,* ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993).

The veteran contends that the June 1983 medical statement from Dr. Moore (R. at 45–48) is new and material evidence for purposes of reopening his claim for service connection of a right-knee disability. The BVA correctly determined that that evidence was "new" within the meaning of section 5108. R. at 10. However, the BVA incorrectly concluded that the new evidence was not "material".

■ The statement from Dr. Moore indicates that the veteran had cartilage-removal surgery on his right knee along the medial aspect in 1966. R. at 45. Furthermore, the statement identifies several disabilities of the right knee existing in 1983—chondromalacia of the patella (premature degeneration of the cartilage of the knee cap, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY [hereafter DORLAND'S] 327 (1988)), subluxation of the patella (incomplete or partial dislocation of the knee cap, DORLAND'S 1241, 1599), and collateral ligament weakness. R. at 47. When viewed in the context of the evidence previously of record, including SMRs showing in-service diagnoses of a right-knee disability, including a strain or tear of the right medial collateral ligament, this evidence creates a reasonable possibility of changing the outcome of the case.

■ In his motion for partial remand, the Secretary asserts that the Board on remand should be directed to seek to obtain the records of the veteran's 1966 right-knee surgery and to provide for an examination of the veteran to determine if his current right-knee disability is related to the right-knee disability noted in service. Pursuant to 38 U.S.C.A. § 5107(a), once a claimant submits a well-grounded claim, VA is required to assist that claimant in developing the facts pertinent to the claim. *See Murphy,* 1 Vet. App. at 81 (well-grounded claim is a "plausi-

ble" claim). Based on the evidence of a right-knee disability in service and at present, the Court holds that the veteran's claim is, as a matter of law, well grounded. *See Grottveit, supra.*

■ The Court also agrees with the Secretary that the duty to assist in this case includes an obligation to seek to obtain the records of the veteran's 1966 right-knee surgery, *see Masors,* 2 Vet.App. at 187 (BVA required to seek to obtain private medical records of which it was on notice), and to provide for "a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991). The examiner should be instructed to express an opinion as to whether the veteran's current disabilities are in any way related to his disability manifested in service. *See Wilson (Lawrence) v. Derwinski,* 2 Vet. App. 16, 21 (1991).

■ In his brief, the veteran asserts that the Court should reverse the BVA decision as "clearly erroneous" (*see* 38 U.S.C.A. § 7261(a)(4)) and direct an award of service connection for his right-knee disability. However, in view of the incomplete nature of the record before the BVA and this Court, the Court is precluded from determining at this time whether the Board's decision was clearly erroneous. *See Murincsak v. Derwinski,* 2 Vet.App. 363 (1992). Therefore, remand for further development is the appropriate remedy now.

## C. *Secondary Service Connection*

The premise of the veteran's claims for service connection for a bilateral leg disorder, a bilateral foot disorder, a left-knee disability, and arthritis of multiple joints is unclear. His SMRs indicate no diagnosis or treatment of these disabilities. The 1983 medical statement first indicates the existence of each of these disabilities in August 1983, 26 years after separation from service, but does not link the disabilities either directly to service or to a service-connected disability. R. at 45–48. Nor is there any

competent evidence in the record connecting any of those disabilities to service.

■■■■■ The only evidence linking arthritis to service is the veteran's own testimony at the November 1989 hearing. The veteran testified under oath that he believed the arthritis had started in his right knee and spread throughout his body. R. at 65. He further testified that he had had no in-service injuries to his feet or left knee. *Ibid.* Although the veteran is competent to provide an account of his symptoms, "the capability of a witness to offer such evidence is different from the capability of a witness to offer evidence that requires medical knowledge". *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). As to the latter evidence, a lay person is not a competent witness. *Ibid.* Therefore, the veteran's statements are not competent evidence of a causal relationship between his service-connected disabilities and the disabilities he contends are secondary. Consequently, under section 5107(a) and *Tirpak, supra,* the Court holds that the veteran's secondary-service-connection claims are not, as a matter of law, well grounded, because, as the Board noted parenthetically, "there is no clinical evidence on file that suggests the veteran's left[-]knee disorder and arthritis of multiple joints began as a result of his right-knee disability". R. at 10.

■■■■ The Secretary has moved for a remand on the issues of these secondary disabilities, because, he says, they are "inextricably intertwined" with the issue of the right-knee disability. Mot. at 7; *cf. Harris v. Derwinski,* 1 Vet.App. 180, 183 (1991). He asserts that if the Board finds service connection for the right-knee disability on remand, secondary service connection for the remaining disabilities should be readjudicated accordingly. However, the Court is not bound by the Secretary's concessions and, on the facts of this case, must deny the motion for remand because the claims are not well grounded as a matter of law. *Cf. Mason v. Derwinski,* 2 Vet.App. 526, 527–28 (1992) (Court denied Secretary's motion for remand to allow BVA to determine if evidence was new and material). The Board denied the secondary-service-connection claims on the

basis that service connection had not been established for the right-knee disorder claimed to have caused those secondary disabilities. R. at 10. However, even if service connection were to be granted for the right-knee disability, the veteran's secondary-service-connection claims would still not be well grounded under *Tirpak, supra.* Thus, the Court holds that the Board properly denied service connection for a bilateral leg disorder, a bilateral foot disorder, a left-knee disability, and arthritis of multiple joints. The Secretary's motion for remand on these issues will be denied, and the Court will affirm the BVA's decision.

### III. Conclusion

Upon consideration of the record, the appellant's brief, and the Secretary's motion for partial summary affirmance and partial remand, the Court holds that the appellant has not demonstrated with respect to (1) the claim of CUE in the June 1957 denial of service connection for a right-knee disability and (2) the claims for secondary service connection for a bilateral leg disorder, a bilateral foot disorder, a left-knee disability, and arthritis of multiple joints that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C.A. §§ 7252, 5107(a), (b), 7104(d)(1), 7261 (West 1991), and the analysis in *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). The Court grants the Secretary's motion for summary affirmance with respect to the CUE claim and summarily affirms the March 20, 1992, BVA decision with respect to that claim. The Court denies the Secretary's motion for remand with respect to the secondary-service-connection claims and summarily affirms the March 1992 BVA decision with respect to those claims.

The Court grants the Secretary's motion to remand the right-knee claim for reopening and readjudication based on all the evidence of record, vacates the March 1992 BVA decision with respect to that claim and summarily remands that claim to the Board for prompt readjudication and issuance of a new

decision based on all evidence and material of record and adequately supported by reasons or bases. *See* 38 U.S.C.A. § 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). "On remand, the appellant will be free to submit additional evidence and argument" on the right-knee claim. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.